CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
April 14, 2026

LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Moon Young Kim, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00054 |
| | ) | |
| The Rector and Visitors of the University of Virginia, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the court on Plaintiff Moon Young Kim's motion for reconsideration. (Dkt. 84.) Kim, proceeding *pro se*, asks this court to reconsider its September 2025 order denying Kim's motion for recusal. (Dkt. 53.) She argues that the documents she recently obtained via FOIA requests to Defendant The Rector and Visitors of the University of Virginia ("the University" or "UVA") mandate reconsideration and recusal under 28 U.S.C. § 455. For the following reasons, the court will deny Kim's motion for reconsideration.

### I.    Background

The underlying facts and procedural history are detailed in this court's previous memorandum opinions. (*See* Dkts. 23, 57.) The court will restate the facts and history relevant to the instant motion.

Kim's complaint arises out of events that occurred while she was enrolled as a doctoral candidate in the University's Systems and Information Engineering program. (*See* Third Am.

Compl. ¶ 2 (Dkt. 60).)  These events began in January 2025, (Dkt. 18 ¶ 21), and continued through June 2025, when Kim filed this action, (Dkt. 1).

On August 25, 2025, Kim moved for recusal, change of venue, and stay of proceedings, contending that the undersigned must recuse herself under 28 U.S.C. § 455(a) and § 455(b). (Dkt. 31.)  Kim argued that several conflicts of interest required disqualification: the undersigned and her spouse's degrees from and affiliation with the University of Virginia, her spouse's prior service as U.S. Attorney for the Western District of Virginia, and the undersigned's former employment at Capital One.  (Dkt. 31 at 4–7.)  The court denied the motion on September 26, 2025.  (Dkt. 53.)  In its memorandum opinion, the court explained how, in accordance with Fourth Circuit case law, the undersigned's connections to the University do not provide a reasonable basis for questioning her impartiality.  (Dkt. 52 at 3–4.)  Moreover, the court dispelled Kim's allegations of "personal bias," "prejudice," or any other "relationship or financial interest in this case which would disqualify her under § 455(b)." (*Id.* at 4–5.)

On October 31, 2025, the court granted the University's motion to dismiss Kim's second amended complaint.  (Dkts. 57, 58.)  The court concurrently granted Kim leave to amend her claims under Title IX of the Education Amendments of 1972, Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act ("ADA").  (Dkt. 58.)  Kim filed a third amended complaint on November 20, 2025.  (Dkt. 60.)  In it, Kim alleges that the University is liable for (1) retaliation under Title IX, (2) discrimination and retaliation under Section 504, and (3) ADA discrimination.  (*Id.* ¶¶ 31–42.)

The University moved to dismiss the third amended complaint on December 4, 2025. (Dkt. 61.)  On January 5, 2026, Kim filed a brief opposing the motion to dismiss, in which she also moved for partial summary judgment.  (Dkt. 65.)  The University moved to stay "briefing and consideration" of Kim's motion for summary judgment until the court rules on the University's motion to dismiss.  (Dkt. 67.)  The same day, U.S. Magistrate Judge Joel C. Hoppe entered an oral order "taking under advisement" the University's motion to stay.  (Dkt. 68.) He ordered that, "[p]ending plaintiff's response to defendant's motion to stay, defendant's time for filing a brief in opposition to plaintiff's motion for summary judgment is extended generally until further order of the Court."  (*Id.*)

Kim responded in opposition to the University's motion to stay on January 12.  (Dkt. 69.)  The same week, she filed a motion for leave to file a surreply to the motion to dismiss, (Dkt. 70), two motions for permission to file electronically via CM/ECF, (Dkts. 72, 73), and a motion for expedited consideration of her pending filings, (Dkt. 74).  On February 19, she moved "to lift the temporary stay," (Dkt. 78), arguing that Judge Hoppe's oral order extending the University's response deadline generally operated as a stay, (Dkt. 82).  Each of these motions is referred to Judge Hoppe.

On March 13, 2026, Kim moved for reconsideration of the court's prior order denying the undersigned's recusal.  (Dkt. 84.)  The University responded in opposition on March 27, (Dkt. 87), and Kim filed a "supplemental reply" on March 30, (Dkt. 88).

## II.    Standard of Review

At the outset, the court notes that Kim mistakenly moves for reconsideration under Federal Rule of Civil Procedure 60(b)(2).  (*See* Dkt. 84 at 28.)  An order is only subject to Rule

60(b) reconsideration if it constitutes a final judgment. *Moore v. Lightstorm Ent.*, No. CIV.A. 11-3644, 2013 WL 4052813, at \*3 (D. Md. Aug. 9, 2013) (citing *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991)). "An order on a motion for recusal is not a final judgment, but rather, an interlocutory order that is not subject to appeal." *Okocha v. Adams*, No. 1:06-cv-00275, 2007 WL 1074664, at \*3 (M.D.N.C. Apr. 9, 2007), *aff'd*, 259 F. App'x 527 (4th Cir. 2007) (citing *United States v. Betancourt*, 128 F. App'x 335, 336 (4th Cir. 2005)). Thus, Rule 60(b) does not allow the court to amend the September order. *Id.* Instead, Rule 54(b) provides the proper avenue for Kim to seek reconsideration of the court's order on the motion for recusal. *Id.* In the spirit of liberal construction afforded to *pro se* litigants, the court will construe Kim's motion as one for reconsideration under Rule 54(b).

## A. Rule 54(b) Motion for Reconsideration

Rule 54(b) provides that "any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). These interlocutory orders are "subject to reconsideration at any time prior to the entry of a final judgment." *Fayetteville Invs.*, 936 F.2d at 1469. The "power to reconsider and modify its interlocutory judgments" under Rule 54(b) is "committed to the discretion of the district court." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003).

But a district court's discretion under Rule 54(b) is "not limitless." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). In the Fourth Circuit, a district court "may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable

law; or (3) clear error causing manifest injustice." *Id.* (cleaned up) (quoting *Am. Canoe Ass'n*, 326 F.3d at 515). Rule 54(b) motions are "not subject to the strict standards applicable to motions for reconsideration of a final judgment" or final order under Rule 60(b). *Am. Canoe Ass'n*, 326 F.3d at 514. Still, "[s]uch motions are disfavored and should be granted 'sparingly.'" *Wootten v. Virginia*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016) (quoting *Downie v. Revco Disc. Drug Ctrs., Inc.*, No. 3:05-cv-00021, 2006 WL 1171960, at *1 (W.D. Va. May 1, 2006)).

### B. Recusal Under 28 U.S.C. § 455

28 U.S.C. § 455(a) requires a judge to "disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." For recusal to be proper under this subsection, there must be an objectively reasonable basis for questioning the judge's impartiality. *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987). Mere speculation as to a judge's impartiality does not justify recusal. *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003).

28 U.S.C. § 455(b) delineates specific situations in which a judge must recuse herself. Subsection (b)(4) states that a judge "shall disqualify" herself when she knows that she, "individually or as a fiduciary, or [her] spouse or minor child residing in [her] household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). A "financial interest" is defined as "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." *Id.* § 455(d)(4).

### III.    Analysis

Kim moves for reconsideration based on "newly discovered evidence." (Dkt. 84 at 28.) She presents a series of documents not discussed in her earlier recusal motion and asserts that the updated record shows how, under 28 U.S.C. § 455(a) and § 455(b)(4), the undersigned is mandatorily disqualified.

### A.  Newly Discovered Evidence

Under Rule 59(e), reconsideration motions may be granted for new evidence not previously available to the movant only if, *inter alia*: (1) the evidence was not previously available to the party, (2) "the evidence is material," and (3) "the evidence is such that is likely to produce a new outcome . . . or is such that would require the judgment to be amended." *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989) (quoting *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987)). Rule 54(b) motions are "not subject to the strict standards applicable to [Rule 59(e)] motions for reconsideration of a final judgment." *Am. Canoe Ass'n*, 326 F.3d at 514. These Rule 59 standards do, however, guide the court's discretion in deciding a Rule 54(b) motion. *See Mamadou v. Cho*, No. 1:20-cv-00146, 2020 WL 13750431, at *1 (E.D. Va. Dec. 23, 2020) ("[I]n assessing whether reconsideration is appropriate under Rule 54(b), the Court has also found instructive the grounds for reconsideration under Rule 59(e).").

Kim explains that she obtained new documents in late February following several FOIA requests.[1] (Dkt. 84 at 27–28; Dkt. 88 at 10–11.) The proffered documents include: (1) a letter from former University President Ryan about the undersigned's prior service at UVA

---

[1] Additionally, several of Kim's "newly discovered" records were filed with the court in January 2026. (*See* Dkt. 84 at 27–29 (citing Dkts. 65-13, 75-3, 65-11).)

from September 22, 2021, (Dkt. 65-13); (2) a January 9, 2019, appointment letter from the Office of the Attorney General ("OAG"), (Dkt. 75-3); (3) an article on the UVA website announcing the undersigned's confirmation, (Dkt. 65-11); (4) a UVA webpage featuring the biography of Barry Meeks, Interim University Counsel, (Dkt. 84-3); (5) a "FOIA Request 4590 exemption log" for July through October 2025 listing University Counsel's Office files and communications, (Dkt. 84-4); (6) a similar "FOIA Request 5037 exemption log", (Dkt. 84-5); (7) state court records from Kim's Charlottesville Circuit Court FOIA proceedings, (Dkt. 84-6); and (8) FOIA-requested data from UVA's Office of Equal Opportunity and Civil Rights ("EOCR") and Department of Systems and Information Engineering, (Dkts. 88-4, 80-4–80-7, 80-11).

None of these documents constitute "substantially different evidence" justifying reconsideration under Rule 54(b), nor do they support a finding that the undersigned must be disqualified under § 455. The court will address each piece of evidence in turn.

1. <u>2019 OAG Letter and 2021 Ryan Letter</u>

The documentation of the undersigned's prior service in the Office of University Counsel, including the 2019 and 2021 letters, do not require disqualification under § 455(a) or § 455(b). The letters from Ryan and OAG do not provide any information that is material to the issue of § 455 disqualification; the only additional facts contained in these letters are details about the undersigned's *prior* compensation and *prior* responsibilities when serving as Acting University Counsel, which ended in June 2022.[2]

---

[2] In her reply brief, Kim also cites minutes from a UVA Board of Visitors meeting in June 2022, supporting the proposition that the undersigned's service as Acting University Counsel ended on June 1, 2022. (Dkt. 88 at 4.) She does not argue—nor does the court find—that this document constitutes newly discovered evidence warranting recusal.

To the extent that Kim reiterates her argument that the undersigned must recuse herself under § 455(a) because of her previous affiliation with the University, this issue was already addressed in the court's September 2025 recusal motion ruling.  As the court underscored in its memorandum opinion, "[a] judge's prior association with a litigant organization 'does not, in itself, form a reasonable basis for questioning a judge's impartiality.'"  (Dkt. 52 at 3 (quoting *Sierra Club v. Simkins Indus., Ind.*, 847 F.2d 1109, 1117 (4th Cir. 1988)); *see Maier v. Orr*, 758 F.2d 1578, 1581–82 (Fed. Cir. 1985) (finding that § 455 recusal was unwarranted where the Air Force was party to the case, even though the judge had formerly served in the Air Force); *Okocha*, 2007 WL 1074664, at *3 (concluding that recusal in a case against Wake Forest University was unwarranted under § 455 where the judge and a member of defense counsel actively served on the Board of Visitors at Wake Forest University School of Law). Additionally, the undersigned's former employment with the University was and always has been public, such that this evidence was previously available to Kim.  *See Wootten*, 168 F. Supp. 3d at 893 ("[R]econsideration is not meant to re-litigate issues already decided, . . . highlight previously-available facts, or otherwise award a proverbial 'second bite at the apple' to a dissatisfied litigant.").

Even considering the substance of the documents, the fact that the undersigned previously served as institutional counsel—and received compensation for her employment— does not mandate disqualification.  The Fourth Circuit, along with other courts, maintains that "[a] judge's prior representation of a litigant generally does not require the judge's recusal." *United States v. Davis*, 801 F. App'x 75, 78 (4th Cir. 2020); *see Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 307 F.3d 617, 621–22 (7th Cir. 2002) ("[A] judge's former representation of a

litigant does not imply any need to disqualify under § 455(a)."); *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978).  And the undersigned's responsibility "to represent the legal interests of the University to the best of [her] ability," as stated in the OAG letter, (Dkt. 75-3 at 2), expired when her University employment ended in June 2022—three years before this case even began.  In fact, courts have repeatedly found that even judges actively employed as a teacher at a university need not automatically recuse themselves from presiding over cases to which the university is party.  *See Medsense, LLC v. Univ. Sys. of Md.*, No. 8:20-cv-00892, 2020 WL 3498084, at *2 (D. Md. June 29, 2020) (collecting cases).

Kim also asserts that the undersigned's prior yearly compensation during her service as Acting University Counsel from 2021 to 2022 shows that she "has a financial interest in the subject matter in controversy or in a party to the proceeding," such that she is disqualified under 28 U.S.C. § 455(b)(4).  (Dkt. 84 at 29.)  But subsection (b)(4) only requires recusal where the judge currently "*has* a financial interest."  28 U.S.C. § 455(b)(4); *see United States v. Dawson*, No. CR 24-00089 MWJS, 2026 WL 309655, at *6 (D. Haw. Feb. 5, 2026) (describing § 455(b)(4) as "a requirement that turns on whether the judge *currently* holds that interest, rather than whether they might have held such an interest in the past") (emphasis added); *cf. Roberts v. Wal-Mart Louisiana, L.L.C.*, 54 F.4th 852, 853–54 (5th Cir. 2022) (per curiam) (holding that a district judge "ought to have recused herself" because she "had owned stock in Wal-Mart *while presiding over this case*" (emphasis added)).  The undersigned does not own any "legal or equitable interest" in UVA or have any current "relationship as director, adviser, or other active participant in the affairs of" UVA.  28 U.S.C. § 455(d)(4).  Nor has she had any financial interest during the pendency of this case.  Accordingly, this subsection is inapplicable here.

2. UVA Webpages

Neither the webpage featuring Barry Meek's biography nor the webpage announcing the undersigned's confirmation constitute newly discovered evidence warranting reconsideration. Both are public webpages, and the article about the undersigned's confirmation was published in March 2024. Accordingly, this evidence was previously available to Kim—even before she filed this suit. The webpages do not fall within the definition of "newly discovered" evidence warranting reconsideration.[3] *See Tully v. Tolley*, 63 F. App'x 108, 113 (4th Cir. 2003) (holding that the district court properly denied a Rule 54(b) motion where the "new evidence . . . could have been discovered with due diligence").

Even if the court were to consider this evidence, it still does not support any reasonable basis for questioning the undersigned's impartiality. Kim introduces Meek's biography to show Meek's "current role as Interim University Counsel and his prior professional history at the University of Virginia." (Dkt. 84 at 28 n.5.) The other article discusses the undersigned's confirmation and quotes Meek among others, mentioning that Meek and the undersigned "worked closely during [the undersigned's] tenure in the Office of University Counsel." (Dkt. 65-11.)

First, the court does not know the details of Meek's involvement in Kim's litigation. While the Office of University Counsel's website states that Meek's role as Interim University Counsel involves providing advice on litigation involving the University, Meek does not formally appear as an attorney in this proceeding.

---

[3] Likewise, the October 2024 Facebook post that Kim briefly references in her reply brief is a public post that existed before this case began. (Dkt. 88-6.)

Even if he were appearing as an attorney, recusal would not be necessary. Meek and the undersigned were in fact former colleagues, but "[a] judge's former affiliation with a[n] . . . attorney in the case is rarely a basis for compelled disqualification." *Roe v. City of San Diego*, No. CV 12-0243, 2012 WL 13176032, at *4 (S.D. Cal. Oct. 24, 2012); *see Alberts v. Wheeling Jesuit Univ.*, No. 5:09-cv-00109, 2010 WL 1928255, at *3 (N.D.W. Va. May 12, 2010) ("Friends, former associates, and even foes of judges appear before them routinely. The circumstances surrounding such appearances vary widely. But such associations certainly do not automatically require a judge to disqualify himself." (cleaned up)); *Hackett v. United States*, No. CV 23-1068, 2023 WL 12120174, at *2 (D. Md. Nov. 29, 2023) ("Many courts . . . have held that a judge need not disqualify himself just because a friend—*even a close friend*—appears as a lawyer." (quoting *United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985)).

　　3.　FOIA Request Exemption Logs and State Court Proceeding Records

Kim's "FOIA request exemption logs" and state court records from the FOIA proceedings[4] are similarly immaterial to the § 455 analysis and recusal decision. First, in the attached FOIA logs, Kim highlights the subject lines of various communications between Associate University Counsel Amy Hensley and Meek. (*See* Dkts. 84-4, 84-5.) She characterizes an email from Hensley to Meek entitled "Moon Kim.msg" as "[t]he most concrete indicator" of the appearance of partiality under § 455(a), because this document was sent on October 31, 2025—the day that this court entered its order dismissing Kim's second

---

[4] These state court records are introduced for the express purpose of showing "that FOIA requests submitted as early as May 12, 2025 remained unproduced as of" November 2025, or to show that the exemption logs and EOCR data were in fact "newly discovered." (Dkt. 84-6 at 1.) Thus, the court treats the underlying requested documents and data as being previously unavailable to Kim. That said, the state court records themselves, (*id.*), do not inform the § 455 analysis and ultimate recusal decision.

amended complaint.  (Dkt. 84 at 30; *see* Dkt. 84-5 at 9.)  It is unclear how this email is at all probative of the undersigned's partiality or the issue of § 455 disqualification.  This evidence merely shows that two colleagues at the current Office of the University Counsel communicated about this matter on the day this court issued an opinion.

Similarly, Kim is unable to explain how the "litigation status reports" sent from Hensley to Meek, the involvement of "Tyler and Rouzer," or any other files listed in her "exemption logs" are even relevant to the undersigned's appearance of partiality or the court's § 455 analysis.  (Dkt. 84 at 30–31.)  To the extent that Kim presents this information as evidence of Meek's involvement in the case, such evidence is not probative and does not warrant reconsideration for the reasons set forth above in Subsection III.A.2.  Kim also implies that the withholding of documents under attorney work product or attorney-client privilege contributes to the appearance of partiality.  (*See id.*)  The court is not persuaded.  The University's application of standard privileges to exempt certain documents from FOIA disclosure has no relation to the undersigned's affiliation with UVA and no relation to the alleged appearance of partiality.  This evidence is irrelevant to the recusal motion that Kim asks this court to reconsider.

4.  <u>EOCR Data and Docket Evidence of "Procedural Asymmetry"</u>

Kim also asserts that there is an appearance of partiality because the undersigned "credited the adequacy of [the University Counsel, Title IX, and EOCR] offices" by granting the University's motion to dismiss in October 2025.  (Dkt. 88 at 8–10; *see* Dkt. 84 at 31.)  In Kim's reply, she submits another document showing high-level data on EOCR complaint outcomes from March 1, 2018 through January 6, 2026.  (*See* Dkt. 88 at 8–10; Dkt. 88-4.)

Contrary to Kim's assertions, the EOCR office's number or rate of complaint denials, even during the years that the undersigned was employed by the University, is immaterial to whether there is a reasonable appearance of partiality in this case. These statistics reveal nothing about the undersigned's work at the University, her belief about the "adequacy" of these EOCR processes, or any other information that may warrant disqualification.

Kim also cites the court's earlier rulings in this case to support her argument for disqualification. She argues that the undersigned's memorandum opinion granting UVA's motion to dismiss "credited both the institutional adequacy of the EOCR and Title IX offices and the longstanding, universal character of the academic policies applied to Plaintiff." (Dkt. 88 at 9–10.) She also argues that Judge Hoppe's oral order—in which he took the University's motion to stay under advisement on the day that it was filed—exhibits partiality. (Dkt. 84 at 31.) As evidence, Kim points to how her motions—three motions filed shortly after the motion to stay, (Dkts. 72, 73, 74), and a motion for sanctions filed in September 2025, (Dkt. 48)—are still pending.

But judicial rulings and case management decisions are almost never a proper basis for recusal. *See Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)) ("[J]udicial rulings and 'opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings' almost 'never constitute a valid basis for a bias or partiality motion.'"); *Perry v. Correct Care Sols., LLC*, No. 1:17-cv-00586, 2017 WL 11519169, at *2 (E.D. Va. June 28, 2017) ("[E]ntry of an adverse ruling, without more, is insufficient to warrant recusal. . . . Because plaintiff points to no extrajudicial source for the Court's alleged bias or prejudice, no

reasonable factual basis for doubting the Court's impartiality has been shown."); *Drumheller v. Kijakazi*, No. 3:21-cv-00565, 2022 WL 4227232, at *6 (E.D. Va. Sep. 13, 2022) ("[A] previous adverse ruling against a party does not give rise to a basis to recuse."); *Lindsey v. City of Beaufort*, 911 F. Supp. 962, 967–68 (D.S.C. 1995) (holding that a "motion to recuse may not be predicated on the judge's rulings in the instant case or in related cases, nor on a demonstrated tendency to rule any particular way, nor on a particular judicial leaning or attitude derived from his or her experience on the bench"). Additionally, for Kim's motions that are not yet resolved, the district court possesses a "broad authority . . . to control its docket." *United States v. Clark*, 172 F.3d 45, at *1 (4th Cir. 1999) (unpublished table opinion); *see also Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) ("Neither the district judge's delay, nor his adverse rulings, constitute the sort of 'pervasive bias' that necessitates recusal."). Finally, the fact that Kim's motions remain pending before the magistrate judge assigned to this case does not evince the undersigned's appearance of partiality.

$$* * *$$

The court assures Kim that the undersigned's prior association with the University has in no way affected her oversight and decision-making in the case. The undersigned has no bias towards any party in this matter. Nor does she have any relationship or financial interest of the type that is prohibited in 28 U.S.C. § 455(b). Recusal is not required here, and Kim's newly introduced documents do not mandate disqualification.

### IV.    Conclusion

For the foregoing reasons, the court will deny Kim's motion for reconsideration of the order denying recusal. (Dkt. 84.)

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this  14th  day of April, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE